# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| NANCY K. O'ROURKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13-CW-193 RB/LAM |
| | ) |
| NORTHERN NEW MEXICO COLLEGE, | ) |
| | ) |
| Defendant. | ) |

## Plaintiff's Motion to Compel Responses to Specified Discovery; or, for Sanctions

COMES NOW Plaintiff, by and through her attorneys, JONES, SNEAD, WERTHEIM & CLIFFORD, P.A., and respectfully moves this Court to enter an order compelling Defendant Northern New Mexico College ("NNMC") to respond to Plaintiff's discovery requests and to grant sanctions against NNMC for its failure to respond appropriately to discovery.

The parties have entered into good-faith discussions regarding discovery disputes and some issues have been resolved. However, the issues addressed in this motion have not been resolved.

## BACKGROUND

Nancy O'Rourke was the Director of Human Resources at NNMC from 2007 until 2011. In analyzing salaries across NNMC (part of her job duties as Director of Human Resources), Ms. O'Rourke determined that her own salary of $53,200 was "out of sync" with those of other employees with similar responsibilities and authority. When she raised this concern, she was first told that she would be receiving a raise to correct the deficiency; however, the promised raise never materialized, with budget concerns being blamed. At this same time she was being told that she couldn't have an appropriate raise because of budget concerns, she noticed that

numerous others—mostly Hispanic men—were receiving raises.  A salary survey performed by Stone Associates, LLC, an external contractor, confirmed that there were across-the-board problems with salary discrepancies; however, nothing was ever done.  When Ms. O'Rourke refused to drop the issue and continued to raise her concerns about her own and other "out of sync" salaries, she began to face retaliation and harassment at work.  In 2011, she was demoted and moved to a basement office and her former part-time assistant was promoted over her to take the Director of Human Resources position, with Ms. O'Rourke required to report to her.  Then, contract was then not renewed and the position of Director of Human Resources was filled by Bernie Padilla at an initial salary of $89,000—nearly double what Ms. O'Rourke had been paid.  Mr. Padilla was also given a staff of at least three to handle the job Ms. O'Rourke had done by herself.  NNMC claims that Ms. O'Rourke's demotion and non-renewal were tied solely to what it alleges was inadequate performance.  In support of this position, NNMC relies heavily on an anonymous "Staff and Faculty Survey" handled through the online service "Survey Monkey."

NNMC's discovery failures fall into two broad categories.  First are discovery requests that NNMC has simply failed to respond to at all, claiming that because Dr. Nancy Barcelo (the current president of NNMC) was dismissed as an individual defendant the day her responses to Plaintiff's discovery were due, that there was no need to respond or to make any objections—it was free to simply ignore the requests.  The second category relates to the salary survey performed by Stone Associates, LLC ("the Stone Survey") and the Staff and Faculty Survey ("the Survey Monkey survey").  In addition to the issues related to these specific documents, however, NNMC's approach to its discovery obligations as evidenced by these specific documents is generally deficient.  Because of the nature of NNMC's deficient responses, a motion compelling responses as well as sanctions described below are appropriate.

## I.  NNMC Failed to Respond to Three Separate Discovery Requests and Should be Compelled to Respond to Those Requests Now.

On January 7, 2014, Plaintiff served her First Set of Interrogatories on Defendant Nancy Barcelo ("First Interrogatories to Dr. Barcelo"); her Second Set of Requests for Production to Defendant Northern New Mexico College ("Second RFP's to NNMC"); and her First Set of Interrogatories to Defendant Northern New Mexico College ("First Interrogatories to NNMC"). The Second RFP's requested production of documents relevant to Dr. Barcelo's answers to the First Interrogatories to Dr. Barcelo.  NNMC never made any response or objections to these requests.  When Counsel raised this concern with NNMC by letter, NNMC asserted that no response to the First Interrogatories to Dr. Barcelo or to the Second RFP's to NNMC were required—because, it said, Dr. Barcelo was dismissed as an individual defendant on February 6, 2014—the day the discovery responses in question were due.  Never during discussions of the dismissal of the individual defendants (an essentially administrative task necessitated by the fact that Ms. O'Rourke filed this suit pro se) did counsel for NNMC raise the possibility that pending discovery requests would be obviated by the dismissal; and, in fact, Susan Meredith did answer the discovery requests served on her a few weeks earlier.  NNMC's position therefore relates solely to timing: because Dr. Barcelo was dismissed on the day her discovery responses were due, her need to respond or object was "obviated" (May 15, 2014 Letter from Joseph Romero at 1 ("Letter").

The fact is that counsel for NNMC simply never calendared or made any effort to respond to any of these three discovery requests.  With regard to Plaintiff's Second Set of Interrogatories to Defendant NNMC (served the same day as those discovery requests related to Dr. Barcelo) they admit that " . . . through inadvertence, these requests were not calendared . . . These responses are now in the process of being drafted."  <u>Id.</u>  NNMC would therefore have us

believe that its failure to respond to the First Interrogatories to Dr. Barcelo and the Second RFP's to NNMC was based on a reasoned and articulable (if unstated) objection, while the failure to respond to the First Interrogatories to NNMC—served on them with the very same email as the other discovery requests—was a calendaring error. Incidentally, had NNMC asserted, during discussions regarding dismissal of the individual defendants, that such dismissal would free them from any discovery obligations, Counsel would have objected to the dismissal pending responses to the discovery requests or made other arrangements: clearly, Ms. O'Rourke was entitled to obtain discovery from the president of NNMC and would have done so. Where no objection was made until NNMC was alerted to their complete failure to respond over four months after service of discovery requests, the objection must fail and NNMC should be compelled to respond fully to Plaintiff's First Interrogatories to Dr. Barcelo and to Plaintiff's Second RFP's to NNMC.

## II. NNMC's Feigned Confusion Regarding the Salary Survey and the Survey Monkey Survey Demonstrates a Bad-Faith Approach and Must be Sanctioned.

Plaintiff's Interrogatory No. 9 to NNMC stated as follows:

*Please identify the person or persons responsible for designing and implementing the "staff and faculty survey" conducted by NNMC's Department of Institutional Research as identification [sic] in Susan Pacheco's "Notice of Contemplated Action" dated August 17, 2011, and describe what steps were taken to implement or administer that survey.*

NNMC responded that the persons responsible for designing the survey were unknown; that Karen Stone, of Stone Associates LLC, had been responsible for implementing the survey; and that steps taken to implement the survey were unknown.

The other answer most crucially at issue is that to Plaintiff's Interrogatory No. 4, which requested:

*Please provide copies of all salary surveys or audits performed by NNMC, or contracted for by NNMC, including any surveys conducted internally, during the past ten years.*

NNMC responded that it had searched records but had been unable to locate the surveys or audits. NNMC further stated in its discovery responses: "Defendant NNMC has requested these documents from Ms. Stone, and Defendant NNMC will supplement its Response to this Request for Production." On March 24, 2014, NNMC supplemented its answer with the Survey Monkey pages previously produced as part of the EEOC investigation. This supplement appeared to both confirm and follow up on the previous statement to the effect that Ms. Stone had been responsible for implementing the Survey Monkey survey; and suggested that in response to the request to Ms. Stone, it had successfully obtained the documents in question and was now able to provide them.

In fact, all of this was untrue. NNMC had not ever requested the documents from Ms. Stone; and Ms. Stone had nothing to do with the Survey Monkey survey. NNMC knew exactly who was responsible for handling the Survey Monkey survey (Carmella Sanchez, as stated by Susan Meredith during her deposition and by counsel for NNMC in its discovery letter of May 15, 2014), but chose not to disclose the name. Karen Stone confirmed, after March 24, 2014, that she had never been contacted by NNMC with a request for a copy of the Salary Survey; and further confirmed that she had nothing to do with the Survey Monkey survey.

NNMC has an explanation for this apparently deceptive conduct; however, the explanation is unconvincing. Counsel for NNMC states that " . . . this case involved two types of surveys were at issue. The salary surveys were implemented by Karen Stone. Survey Monkey was the other survey utilized at NNMC. Confusing the two at times in this litigation was sometimes inevitable but always inadvertent." Letter at 2. First, such confusion—when Plaintiff had taken care in Interrogatory No. 9 to identify the Survey Monkey survey both through identification of the NNMC department responsible for the survey, but also by identification of

an NNMC document in which the survey was specifically identified—is far from inevitable and cannot realistically be believed to be inadvertent. Of further concern is the fact that, if NNMC genuinely thought that the Survey Monkey survey was responsive to Interrogatory No. 4, it should have produced the entire document—not the limited fragment actually produced, which fragment included only that portion of the Survey Monkey related to the Human Resources Department and didn't even include the questions the survey respondents were answering.

With regard to the claim that NNMC "had requested" copies of the documents from Ms. Stone, *after* being informed of Ms. Stone's confirmation that she had never been asked by NNMC for the document, NNMC's counsel now claims that "Bernie Padilla was asked to contact Karen Stone for the requested salary surveys. He did not do so in a timely manner. He has since sent two emails, and Mr. Basham provided him with the contact number you have provided." Letter at 2. If there had simply never been any follow-up, this explanation might be conceivable. However, after claiming to have contacted Ms. Stone and promising to supplement its response, NNMC *did* supplement its response—something that would be expected to occur only if NNMC had in fact contacted Ms. Stone and had received the documents from her. And, NNMC's supplement consisted of documents it had previously claimed Ms. Stone was responsible for preparing—the Survey Monkey survey. The production of the Survey Monkey as a supplemental response therefore confirmed that NNMC was meeting its discovery obligations; that it had followed up on a promise to contact Ms. Stone; and that the Survey Monkey had been performed by Ms. Stone, rather than by NNMC. None of these things are true: NNMC had not contacted Ms. Stone; NNMC was not meeting its discovery obligations, as it had made no identifiable effort to actually obtain the Salary Survey from Ms. Stone (or, incidentally, from its own records; a separate issue addressed below); and Ms. Stone had nothing to do with

the Survey Monkey survey—a fact well known to NNMC but not disclosed in response to specific questions asking who had handled it.

### a. *Plaintiff Has Been Prejudiced By NNMC's Misrepresentations Regarding Discovery*

The two surveys at issue in this case are crucial documents. The Stone Survey revealed that there were " . . . problems with classifications . . . and they made some recommendations about that. They did point out to us . . . high and low ranges in salary areas where people may have been in or out of sort of an average range." Deposition of Susan Meredith, April 29, 2014, 29:15-19. These facts are precisely what Ms. O'Rourke had herself discovered in analyzing NNMC's salaries and ranges—an analysis through which she discovered that her own salary was inappropriately low. In connection with this discovery, Ms. O'Rourke was told that her salary would be increased and that money had been budgeted to increase her salary to $65,000 annually—an increase that would have put her closer in range with other employees with similar levels of responsibility. Without this document, Ms. O'Rourke is unable to demonstrate the discrepancies she had discovered through anything but her own spreadsheets—documents that are subject to challenge simply because she was preparing them herself to show a discrepancy that, if addressed, would benefit her. The Stone Survey is the only independent corroboration of Ms. O'Rourke's own findings. The Stone Survey is further crucial to Ms. O'Rourke's demonstrating that NNMC was aware of problems, but elected to disregard them. Susan Meredith, former Chief of Staff of NNMC, confirmed that Dr. Nancy Barcelo, president of NNMC, had chosen to do nothing (Q: "What did the college do with that information?" A: " . . . no action was taken on the information"). Without the document itself, Ms. O'Rourke is unable to show why it matters that NNMC elected to do nothing.

With regard to the Survey Monkey survey, that document is one of the key documents NNMC has relied upon to justify its decision not to renew Ms. O'Rourke's contract and in demoting her from her position as Director of Human Resources. NNMC stated in its "Timeline: NNMC Response to EEOC Request for Information – Item #7" that "As a result of the survey, and other complaints that Susan had received . . . Susan [Meredith] prepared a Notice of Contemplated Action seeking to suspend Nancy." Plaintiff's discovery requests with regard to this document were aimed at uncovering the process by which the survey was designed and implemented—facts that would be directly relevant to determining whether the survey was admissible, whether NNMC's response to the survey was applied evenly or whether the action taken against Ms. O'Rourke was disproportionate. Identification of Carmella Sanchez, the NNMC employee responsible for handling the survey, would have enabled Ms. O'Rourke to pursue this crucial avenue of discovery.

Instead of identifying Ms. Sanchez, however, NNMC claimed falsely that Karen Stone was responsible for handling the Survey Monkey survey and that it knew nothing about the methodology used or how the survey was implemented. Pursuing discovery against Ms. Stone is complicated by numerous factors: first, she is not a party or associated with any party; second, she was employed as a contractor for the college and has therefore taken the position that she could disclose documents only to NNMC and not to Ms. O'Rourke; third, she resides in Mexico. NNMC's false or erroneous claim that Ms. Stone was responsible for the Survey Monkey survey (and its false representation that it had already contacted Ms. Stone requesting the document) effectively cut off inquiry into that document—and as a result deprived Ms. O'Rourke of the opportunity to adequately prepare to rebut NNMC's claim that she was terminated as a result of the survey.

***b. Where a Party's Willful Disregard of its Discovery Obligations Causes Prejudice to Another Party, Sanctions are Appropriate.***

Fed. R. Civ. P. 37(c)(1), **Failure to Disclose or Supplement**, provides that:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order the payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions[.]"

In the Tenth Circuit, a party may be granted an instruction regarding an adverse inference for destroyed evidence where the party in possession of the evidence knew, or should have known, that litigation was imminent and the requesting party was prejudiced by the destruction of the evidence. Turner v. Public Service Co. of Colorado, 563 F. 3d 1136, 1149 (10th Cir. 2009). Here, the Salary Survey was performed precisely because there were questions regarding the appropriateness of pay scales; and the absence of these documents causes prejudice to Ms. O'Rourke through the absence of information that supports her position. In this circumstance, NNMC knew or should have known that the survey was important Ms. O'Rourke's complaint (originally filed with the EEOC in September of 2011) and should have taken care to retain it.

The present circumstance, however, goes beyond a simple matter of spoliation. If NNMC were able to say that on a certain date the Salary Survey was destroyed because digital records were purged according to a particular schedule, the matter would be simple. If NNMC were able to say that the Salary Survey had been destroyed because the only known copy was kept in Susan Meredith's email and her email account had been purged following her departure from NNMC, it would be a simple matter. Instead, NNMC has asserted that they have looked for the document; has asserted falsely that they went to the source of the document; has in fact

produced documents claiming that they were responsive to this request—none of which were true. An honest recognition that the documents had been destroyed would make this matter relatively simple. Instead, NNMC has made repeated misrepresentations that appear in all ways to be intentional and aimed towards convincing Plaintiff that it had met its discovery obligations when in fact it had not.

Where, as here, a party seeks an adverse inference as a sanction for discovery abuse, it must proved that there was bad faith involved in the abuse. <u>Turner v. Public Service Co. of Colorado</u>, 563 F. 3d 1136, 1149 (10th Cir. 2009). Importantly, NNMC has offered only a single explanation for these inaccurate and misleading statements and representations: that it was confused regarding the two surveys and that such confusion was "sometimes inevitable but always inadvertent." As noted above, Plaintiff's Request for Production not only identified the Survey Monkey survey, but the department at NNMC it came from and the NNMC document—including the author and date of that document—in which it was cited as being important to this litigation. Confusion regarding what Plaintiff was asking about was never inevitable, and cannot have been inadvertent unless NNMC took an utterly indifferent approach to its discovery obligations that can only be classified as bad-faith. A further question raised by this position is why, if NNMC believed that the Survey Monkey survey was responsive to Request No. 4, it produced only those pages related directly to the Human Resources department for the year Ms. O'Rourke was in that position—even though Ms. Meredith confirmed at her deposition that an equivalent survey was done annually and that that survey was "much broader" than the portion relating to the Human Resources Department. Deposition of Susan Meredith, April 29, 2014, 45:3-25, 46:1.

Where a party has failed to comply with its discovery obligations, this Court has broad discretion to fashion an appropriate sanction, including proceeding to trial with an adverse inference instruction. See Residential Funding Corp. v. DeGeorge Financial Corp., 306 F. 3d 99 (2d Cir. 2002) (noting that sanctions including adverse inference instructions are appropriate even in the absence of a discovery order and citing for support to Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). In that case, the Court determined that the opposing party had been "purposely sluggish" in producing discovery materials. Here, NNMC has been flatly misleading and inaccurate in its representations and has refused to answer the questions that would enable Plaintiff to determine whether or not it had in fact acted in good faith regarding its discovery obligations. Counsel for NNMC represents that, after the sworn interrogatory statement was made that Ms. Stone "had been asked" for the document (past tense), "Bernie Padilla was asked to contact Karen Stone . . . He did not do so in a timely manner." In fact, he did not do so until after the discovery letter threatening this motion was sent.

Also important is NNMC's refusal to offer any explanation for its failures, or to explain what it may actually have done to search for the documents in question. During her deposition, Ms. Meredith (who is no longer employed by the college) stated that if she were looking for the Salary Survey, she would look on her own computer first "And then in the HR Department's – however they are archiving their electronic files." Deposition of Susan Meredith, 53:15-16. NNMC says that it has no policies or procedures in place regarding retention or routine deletion of digital files. Given this answer and the revelations regarding NNMC's failure to disclose known facts regarding the Survey Monkey survey and its inaccurate answer regarding its efforts to obtain the Salary Survey from Ms. Stone, Counsel asked for an explanation of the steps that had been taken to locate the Salary Survey. Counsel for NNMC refused to answer this question,

asserting that because the interrogatory in question had not asked for information regarding electronic archiving and steps taken to search that or other archives, no answer was necessary.

This answer ignores the issue, which is that if NNMC had honestly and forthrightly answered the questions at issue there would be no need to discuss what steps NNMC had taken in searching for records. The question regarding how NNMC determined, in light of the fact that the documents in question were digitally produced and archived and that NNMC has no policy regarding retention or deletion of digital records, is only relevant to understanding whether NNMC did in fact undertake in good faith to search for the documents in question. And given that digital records tend to continue to exist on servers until affirmative steps are taken to remove them, without some system of removing files NNMC's position that it searched for the records but couldn't find them—especially in light of its generally cavalier approach to discovery—is highly suspect.

## III. NNMC Has Disregarded Other Discovery Obligations, Demonstrating a Pattern or Practice.

Other discovery issues have arisen during this litigation, which have generally made discovery more burdensome and less worthwhile than it should have been. For example, although Susan Meredith had been designated by NNMC under a Rule 30(b)(6) notice as someone who was specially qualified to discuss the history of the position of Director of Human Resources, she stated that she was "not sure" why she had been so designated and that she had never been asked to prepare for the deposition in any way. Deposition of Susan Meredith, 24:21-25, 25:1-14. Similar issues arose with regard to budget and audit documents requested in discovery, which NNMC initially claimed were too burdensome to produce, because they were only in paper form; and then, after Counsel traveled to Espanola to view the documents in their paper form, admitted that they were after all available digitally and could be produced. Although

such issues have to some extent been resolved, they demonstrate a general pattern and practice of obstruction and failure to meet discovery obligations by NNMC.

**CONCLUSION**

NNMC has here engaged in a pattern or practice of failure to meet its discovery obligations, generally and with regard to specific documents and answers.  This conduct has significantly prejudiced Ms. O'Rourke's ability to prepare for her case and will prejudice her ability to prove her case at trial.  NNMC's conduct also strongly suggests that its answers and failures were deliberate, and it has refused to answer questions that would enable Ms. O'Rourke to determine whether its conduct were truly in good faith as it claims.  Under these circumstances, discovery sanctions are appropriate.

For these reasons and those stated above, Plaintiff respectfully requests that this Court enter an Order compelling NNMC to respond to all unanswered discovery without objection; to enter an Order permitting Plaintiff an adverse inference instruction with regard to the surveys at trial; and further Order NNMC to pay costs and fees incurred in addressing these discovery issues.

Respectfully Submitted,

JONES, SNEAD, WERTHEIM &
CLIFFORD, P.A.

By:     /s/*Samuel C. Wolf*
         Samuel C. Wolf
         1800 Old Pecos Trail
         Santa Fe, NM 87501
         Tel. (505) 982-0011
         sam@thejonesfirm.com

## **CERTIFICATE OF SERVICE**

It is hereby certified that on this 23d day of May, 2014, a true and correct copy of the foregoing was served upon Mark Basham by email at mbasham@bbpcnm.com.

*/s/Samuel C. Wolf*