IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NANCY K. O'ROURKE,           )
                             )
    Plaintiff,                )
                             )
v.                           )    Case No. 13-CV-00193RB/LAM
                             )
NORTHERN NEW MEXICO COLLEGE,  )
                             )
    Defendant.                )
                             )

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL RESPONSES TO SPECIFIED DISCOVERY; OR FOR SANCTIONS**

COMES NOW Plaintiff, Nancy K. O'Rourke, by and through her attorneys, JONES, SNEAD, WERTHEIM & CLIFFORD, P.A., and for her Reply to Defendant's Response ("Response") to her Motion to Compel Responses to Specified Discover; or for Sanctions ("Motion to Compel") states as follows:

NNMC has approached discovery in this case with an apparent disregard for its obligations and for the truth. In its Response, NNMC blames these its failures on poor record keeping, negligence, and on its counsel being "confused." Such explanations are inadequate to justify its failures, and sanctions are appropriate.

**I. Plaintiff's First Set of Interrogatories to Defendant Nancy Barcelo**

Defendant served interrogatories and requests for production on Dr. Nancy Barcelo, and requests for production on NNMC, on January 7, 2014. Plaintiff still has never received a response to the discovery requests to Dr. Barcelo. NNMC did not respond to the requests for production served upon it until after Plaintiff had filed her Motion to Compel. NNMC never made any objection to any of these three discovery requests.

In response to Plaintiff's Rule 37 letter, NNMC presented differing explanations for its failure to respond to these different requests: it claimed that it had simply forgotten to calendar its response to the Requests for Production served on NNMC but that it was justified in not responding to the requests served on Dr. Barcelo because she was dismissed as a personal defendant the day before her responses were due. In light of this dismissal, Defendant asserts that requiring Dr. Barcelo to respond to discovery even though Plaintiff agreed to her proper dismissal from the case as a defendant "runs afoul of the policies encouraging settlement" and cites Stewart v. M.D.F., Inc., 83 F. 3d 247 (8th Cir. 1996). This Missouri case addressed two attorneys who essentially required a mini-trial to resolve a factual dispute over a settlement negotiation they had held in the courthouse hallway during the jury's deliberations. Id., 83 F. 3d at 252. The court noted its aversion to such additional burden on its resources. Here, in contrast, counsel for the parties discussed the proper dismissal of Dr. Barcelo as a defendant, but such discussions never included any suggestion that the dismissal would make Dr. Barcelo immune from discovery. The fact was that Dr. Barcelo had been named in Plaintiff's initial, pro-se complaint, and it was appropriate to dismiss her as an individual defendant. Such dismissal did not, however, confer implicit immunity from discovery. Defendant asserts that "To litigate matters involving a settled individual Defendant is a waste of judicial resources." Plaintiff is not seeking to litigate matters involving a settled defendant; she is seeking an answer to discovery served over six months ago.

Further, Defendant's focus on this abstract discussion is merely a cover for the facts. In fact, NNMC simply never responded to any of the discovery served on January 7, 2014. Half a year later, NNMC claims to have simply forgotten to respond to its own discovery, but that it has a legitimate explanation for Dr. Barcelo's failure to respond. Any legitimate objection to

responding should have been filed within the 30-day response time, and all objections are therefore waived. Further, the explanation that Dr. Barcelo was immune to discovery because of a "settlement" that never existed is implausible. Dr. Barcelo should be compelled to respond to the discovery served upon her on January 7, 2014 and Plaintiff should be permitted appropriate follow-up discovery to her answers.

## II.  Plaintiff's Second Set of Interrogatories to Defendant NNMC

Subsequent to Plaintiff's filing her Motion to Compel and after the Court's deadline for filing of Motions to Compel, Defendant did respond to discovery requests served on January 7, 2014—over four months late. Given the timing of these answers, Plaintiff will address the adequacy of the responses promptly and will seek extension of appropriate deadlines as necessary.

## III.  Plaintiff's Interrogatory No. 9 to Defendant NNMC

There are two surveys at issue in this case: one, conducted by an NNMC internal department, which NNMC cites as one of the reasons it terminated Ms. O'Rourke; and another, conducted by an outside consultant, Karen Stone, which revealed problems with the salary structure at NNMC. Plaintiff's interrogatory at issue here stated:

> Please identify the person or persons responsible for designing and implementing the "staff and faculty survey" conducted by NNMC's Department of Institutional Research as identification [sic] in Susan Pacheco's "Notice of Contemplated Action" dated August 17, 2011, and describe what steps were taken to implement or administer that survey.

Defendant's "confusion" over this question, which clearly identifies both an NNMC internal reference to the specific document at issue *and* the NNMC department responsible for preparing that document, is implausible, as is defense counsel's claim that he " . . . mistakenly assumed that Karen Stone was responsible for both surveys. Nevertheless, NNMC then digs

itself deeper, claiming that ". . . Because both surveys came from outside sources, it was perfectly natural to assume that NNMC contracted with Stone for all its surveying needs." Response at 4. However, the "staff and faculty survey" *didn't* come from an outside source; as is clearly stated in the question itself: it came from NNMC's "Department of Institutional Research." Further belying NNMC's claim of confusion, it not only answered the question falsely, but affirmatively (and falsely) represented that it had contacted Ms. Stone and that it would supplement its response. Then, it *did* supplement the response—implicitly affirming both its original answer and that it had in fact contacted Ms. Stone. These actions, considered together and in sequence, go far beyond "confusion," and defense counsel's claim that he simply made an erroneous assumption fails to justify NNMC's disregard for its discovery obligations. A party's discovery obligation is not to permit its counsel to assume without inquiry that he knows the answer, and then to sign off on those answers without correcting clear misinformation. Defendant NNMC is responsible for its discovery answers, and should be held accountable for falsehoods and misinformation provided in those answers.

In Tom v. S.B., Inc., , one issue in discovery concerned electronic tracking data in a commercial truck that had been involved in an accident. Discussing the discovery request for such data, the court there noted that "To make matters more complicated, there is more than one type of electronic tracking unit on a commercial truck." 280 F.R.D. 603, 613 (D.N.M. 2012). The Plaintiff had sought information on any such unit; however, the Defendant provided information on only one of the two units, prompting the court to find that the Defendant had access to the data in question but had "lied . . . regarding [its] very existence." Id. Here, similarly, there are two types of data involved, which Defendant asserts are "confusing." Despite being confused, NNMC confidently and without apparent confusion provided

information solely about one type of data; then supplemented its initial answer, as it had promised to do based on its representation that it had contacted Ms. Stone. This created the same misrepresentation found in Tom: even if NNMC can technically wriggle out from having affirmatively lied about something, it has engaged in a series of actions that all have the effect of conveying something that is patently false. Such conduct is sanctionable.

Defendant blames misinformation provided regarding the source of various surveys conducted by NNMC on its counsel "mistakenly assum[ing] that Karen Stone was responsible for various surveys." Plaintiff's interrogatories were propounded on NNMC; not their counsel; and complete and honest answers are NNMC's obligation. NNMC's excuse that "counsel was confused" is just that: an excuse. NNMC had an obligation to answer questions fully and completely, and did not fulfill that obligation.

NNMC further tries to shrug off the false statement that it had already contacted Ms. Stone by saying that Bernie Padilla was supposed to have followed up on that contact, but didn't. In fact, months after making this representation, defense counsel contacted Plaintiffs' counsel asking for Ms. Stone's telephone number. (Incidentally, the number had been provided in discovery over five months earlier). Together, these numerous issues do not tell a story of simple confusion, bad record keeping, and staff turnover. They tell a story of misinformation so thorough that it can only be deliberate, and of after-the-fact justifications manufactured after evidence of such misinformation was uncovered. NNMC admits that both its inability to locate the requested documents and its failure to actually follow up on the document from Ms. Stone were negligent; but claims that mere negligence does not merit sanctions now that "the confusion has … been cleared up" and that it has produced all documents. Response at 4. "It is not acceptable to conclude that because withheld information is eventually produced, it is no harm,

no foul." Tom, 280 F.R.D. at 618. Further, permitting a party to avoid its discovery obligations by blaming incompetence and poor record keeping has obvious and unsavory implications. "Even worse, Defendants' position may actually encourage poor record keeping as a way to avoid discovery in future lawsuits." Government Benefits Analysts, Inc. v. Gradient Ins. Brokerage, Inc., Not Reported in F. Supp. 2d, 2012 WL 3292850 (D. Kan. 2012).

Besides the impropriety of permitting NNMC to avoid both its discovery obligations and sanctions by simply shrugging and blaming negligence, NNMC's negligence theory simply doesn't hold up. This theory doesn't explain how it could not only make false statements (Karen Stone handled the internal salary survey) followed by false reassurances (NNMC has contacted Ms. Stone to get the documents and we will supplement our answer) followed by further misrepresentations (providing the supplemental answer promised in connection with the false statement that Ms. Stone had already been contacted). Given that the document provided as a supplemental response was one NNMC always had (indeed, it had already been provided in discovery), NNMC *still* can't explain how it would need to provide that document as a supplement—except to cover up its previous misstatement that Karen Stone had been responsible for the survey and the false promise that Ms. Stone had already been contacted.

Defendant cites Turner v. Public Service Co. of Colorado, 563 F. 3d 1136, 1150 (10th Cir. 2009) for support of its argument that no sanction should be granted because Ms. O'Rourke has not shown actual prejudice. In Turner, an employee sought sanctions on the basis of interview notes that were missing from the employer's records. However, the employer had provided "numerous documents" related to the hiring, including the interview score sheets and documents revealing scores of other candidates. Noting that the plaintiff " . . . had access to a significant amount of evidence" regarding the interview and her performance, and further that

the employee had herself acknowledge performing poorly in the interview, the court did not find a sanction appropriate. Here, the documents in question go directly to the heart of the case: NNMC has repeatedly relied on their internal salary survey as justification for firing Ms. O'Rourke and has admitted that the findings of the Stone survey " . . . were that we did have some problems with classifications, job classifications." April 29, 2014 Deposition of Susan Meredith, 29:14-16. Problems with job classifications is precisely what Ms. O'Rourke raised as a concern with regard to her own salary. Her ability to prove her case, as well as to prove NNMC's knowledge of the problem, is significantly compromised by NNMC's misinformation on these two issues.

NNMC promises that this time, it really is trying to find the Stone survey. In addition, to alleviate the prejudice its failure to meet its obligations has caused Ms. O'Rourke, NNMC offers to make Carmela Sanchez, who it now says was responsible for the staff and faculty survey, available for deposition although discovery has ended. Although a deposition could help to alleviate some of the prejudice caused to Ms. O'Rourke, the requested sanction of an inference in Ms. O'Rourke's favor remains appropriate in light of NNMC's utter failure to meet its discovery obligations or to answer questions honestly. Plaintiff accordingly renews her request for sanctions including but not limited to an adverse inference. In addition, Plaintiff will consider the possibility of conducting a deposition on the subject of the surveys and NNMC's internal handling of such surveys under Rule 30(B)(6). Rule 30(B)(6) is the appropriate format here where there is an institutional defendant and a significant risk that a specific individual may simply claim not to have necessary information.

**IV. Defendant NNMC's Pattern or Practice of Disregarding Discovery Obligations**

Defendant NNMC states that Susan Meredith was listed as a 30(B)(6) witness because "she . . . may have had personal knowledge of the Human Resources office." This is not the standard for a 30(B)(6) deponent: a company has an duty to make a "conscientious, good-faith effort to designate knowledgeable persons for Rule 30(B)(6) depositions, and to prepare them to fully and unevasively answer questions about the designated subject matter." E.E.O. C. v. Thorman & Wright Corp., 243 F.R.D. 421 (D. Kan. 2007). Susan Meredith admitted at deposition that she had never been asked to prepare for her deposition in any way and that she was "not sure" why she had been designated to testify on the subjects for which she was designated. April 29, 2014 Deposition of Susan Meredith, 24:21-25, 25:1-14. NNMC argues that because Plaintiff subsequently deposed Bernie Padilla, who was also designated for some of the same subjects. This is the same "no harm no foul" argument made above: even if NNMC has utterly failed to comply with its own discovery obligations, it says, no sanctions are appropriate either because its failures are only negligent, or because its counsel was confused, or because Plaintiff should have found some way to deal with its obstructionist tactics.

NNMC's explanation for its initial refusal to provide budget and audit documents is similar. First, it said that such documents were too burdensome to produce because they existed in paper form only. Then, it "discovered" that such documents were actually available electronically. NNMC claims that this discovery was as a result of Plaintiff's counsel having " . . . noticed that the hard copies appeared to have been computer print-outs." Response at 6. Where the budgets are obviously prepared using Microsoft Excel, it hardly took an act of sleuthing to ask whether the original Excel files might still be available. Indeed, in today's world it is a fair assumption that *any* document not handwritten was prepared on a computer. The alternative—

and what NNMC would have us accept as its explanation—is that it thought it reasonable to assume that a 4-year institution with hundreds of employees and a budget spreadsheet covering hundreds of pages and allocating tens of millions of dollars might have been prepared manually, or with a typewriter.  Then, Plaintiff's counsel drove to Española and "noticed" that it appeared the documents had been created on a computer.  "As a result, NNMC personnel were able to locate the budgets in electronic form . . .".  Response at 6.  This narrative strains credulity, requiring that we accept that no one at NNMC, or its counsel, thought to check to see if there were digital copies of the Excel files showing the budget.

     Again, NNMC blames its failure to simply provide the documents without a letter addressing the concern and a trip to Española on "poor record-keeping and employee turnover."  In fact, the failure is due to NNMC's decision not to make any effort to comply with its discovery obligations.  Under these circumstances, sanctions are appropriate.  Given the pervasive nature of these issues, arising as they do throughout every piece of the discovery process, the sanction of an adverse inference and continued specified discovery for Plaintiff are also appropriate and justified.  At the very least, an appropriate sanction would be payment of Plaintiff's attorneys fees incurred in addressing such issues.

                                                Respectfully submitted,

                                                JONES, SNEAD, WERTHEIM
                                                 & CLIFFORD, P.A.
                                               Attorneys for Plaintiff

                                          By:  _/s/ Samuel C. Wolf_____
                                                 SAMUEL C. WOLF
                                                 Post Office Box 2228
                                                 Santa Fe, New Mexico  87504-2228
                                                 (505) 982-0011
                                                 (505) 989-6288 Fax
                                                 sam@thejonesfirm.com

## CERTIFICATE OF SERVICE

It is hereby certified that on the 26th day of June, 2014, the original of Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Compel Responses to Specified Discovery; or for sanctions, was served electronically to Mark A. Basham, Esq., Basham & Basham, PC, 2205 Miguel Chavez Road, Suite A, Santa Fe, New Mexico 87505

                                                Respectfully Submitted,

                                                JONES, SNEAD, WERTHEIM &
                                                CLIFFORD, P.A.


                                          By: /s/Samuel C. Wolf
                                                Samuel C. Wolf
                                                1800 Old Pecos Trail
                                                Santa Fe, NM 87504
                                                Tel. (505) 982-0011
                                                sam@thejonesfirm.com