**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **NANCY K. O'ROURKE,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **Case No. 13-CV-193 RB/KK** |
| | **)** | |
| **NORTHERN NEW MEXICO COLLEGE,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |
| | **)** | |

**Plaintiffs' Motion in Limine to Exclude Evidence Related to "Survey Monkey" Surveys**

COMES NOW Plaintiff, Nancy K. O'Rourke, by and through her attorneys, JONES, SNEAD, WERTHEIM & CLIFFORD, P.A., and respectfully submits her Motion in Limine to Exclude Evidence pursuant to Fed. R. Evid. 401, Fed. R. Evid. 403, and Fed. R. Evid. 802. As grounds for her Motion, Plaintiff states as follows:

**I. The "Survey Monkey" Surveys are Inadmissible Hearsay.**

In 2011, Northern New Mexico College conducted an anonymous survey using "Survey Monkey," a free, online tool through which anyone may create a survey, provide access to the survey to other individuals through email or other electronic means, and view the results. The survey in question is completely anonymous, and Defendants themselves claim to have little or no information about the survey's design, implementation, or administration.

One of the primary issues in the present case concerns Plaintiff Nancy O'Rourke's wrongful termination. Ms. O'Rourke contends that her termination was improperly motivated; Northern New Mexico College contends that she was legitimately terminated due to performance problems. The college refers in various documents to the "Survey Monkey" survey ("the

Survey"), which allegedly contains evidence of complaints about Ms. O'Rourke and her performance. However, all comments made in the Survey are anonymous, as stated by the Defendant in response to an interrogatory:

> **Interrogatory No. 2:** Please identify each person who responded to the "Staff and Faculty Survey" conducted by NNMC's Department of Institutional Research as identified in Susan Pacheco's "Notice of Contemplated Action" dated August 17, 2011, and indicate which persons were responsible for which comments within that survey.
> **Answer:** Unknown. Each person who responded to the "Staff and Faculty Survey" did so anonymously.

Of further concern regarding the Survey is that NNMC appears to know little or nothing about how the Survey was designed or implemented:

> **Interrogatory No. 9:** Please identify the person or persons responsible for designing and implementing the "staff and faculty survey" conducted by NNMC's Department of Institutional Research as Identification [sic] Susan Pacheco's "Notice of Contemplated Action" dated August 17, 2011, and describe what steps were taken to implement or administer that survey.
> **Answer:** Person or persons responsible for designing the staff and faculty survey: unknown. Person or persons responsible for implementing the staff and faculty survey: Karen Stone. Steps in implementing or administering the survey: Unknown.

As has been previously addressed before this Court (*see* Plaintiff's Motion to Compel Responses to Specified Discovery; or, for Sanctions, filed 05/27/14) ("Plaintiff's Motion to Compel"), it was not, in fact, Karen Stone (a third-party contractor) who was responsible for implementing the Survey. Defendant later admitted that, in fact, it was Carmela Sanchez, a NNMC employee who designed and implemented the Survey. In response to Plaintiffs' Motion to Compel, Defendants were ordered to permit Plaintiff to depose that individual after the close of discovery. Counsel for the parties are in the process of scheduling that deposition.

Besides the Defendant's lack of knowledge about the basic details of how the Survey was designed, implemented, or administered, the Survey itself is demonstrably problematic. For

example, under the heading "Comments on NNMC Human Resources and Campus Services," responses range from "Very unprofessional" to "bitchin!" and "DO THEY KNOW HOW TO DO THEIR JOB CORRECTLY." *See* excerpted pages from Survey, attached hereto as Exhibit 1. It is impossible to know whether these comments relate to Human Resources, or to Campus Services. The Survey lacks even basic indicia of reliability and its design, implementation, and administration were all handled in ways that bar Ms. O'Rourke from making even basic inquiries into the substance NNMC seeks to rely on. Some of the comments are undoubtedly critical, but raise more questions than they answer: for example, when someone complains "Usually no one in HR when I go," how is the HR director to use this information to respond? Has this person gone once, or four times? During office hours or not? One respondent even answered, "What does this question have to do with Human Resources??????" raising concerns regarding the understanding the respondents had to what they were doing.

NNMC's reliance on the Survey as a disciplinary tool is also problematic. First, all of the reasons described above that make the Survey inherently unreliable and render it inadmissible should be of concern to anyone making a termination decision on the basis of these comments as well. Second and as importantly, Defendant itself admits that it is unaware of anyone else having been disciplined on the basis of the Survey, despite comments in the same section such as "switchboard operations are inadequate, rude and incompetent. Chef Ron is a sorry excuse for using that food space, bid it out!" and "Chef Ron should be fired. It is unconscionable that he has been allowed to work here and not pay rent. This is totally unfair." *See* Exhibit 1. Again, in response to specific interrogatories, NNMC stated as follows:

> **Interrogatory No. 13:** Please identify what disciplinary actions were taken against any NNMC employee as a result of complaints made in the "staff and faculty survey" conducted by NNMC's Department of Institutional Research as

identified in Susan Pacheco's Notice of Contemplated Action" dated August 17, 2011.

**Answer:** Other than disciplinary actions taken against Nancy O'Rourke, unknown.

Clearly, the Survey is not intended as a disciplinary tool; and for good reason, since neither the questions, nor the answers, nor the methodology, nor the means by which the Survey is implemented carry any indicia of reliability on which a disciplinary action could be based.

The Survey is inadmissible hearsay because none of the various exceptions to the hearsay rule apply here. The only exception that on its face appears as if it could be at all applicable is Fed. R. Evid. 403(6), "Records of a Regularly Conducted Activity," often referred to as the "business records exception." However, this exception itself excludes the Survey, providing that "A record of an act, event, condition, opinion, or diagnosis" may be excepted from the hearsay rule "if . . . (E) neither the source of the information nor the method or circumstances of preparation indicate a lack of trustworthiness." Here, the source of the information is anonymous and unverifiable and the method and circumstances of preparation are apparently unknown even to the Defendants. What could be more indicative of a lack of trustworthiness? There is absolutely nothing ensuring that the answers in the Survey were not entered by one person with a vendetta, filing survey response after response. Since no exception to the hearsay rule applies, the Survey must be excluded from evidence.

Even if some exception to the hearsay rule applied, however—which it does not—the Survey and references to it must still be excluded under Fed. R. Evid. 403. This rule provides "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." If the Survey

were admitted, substantial time would need to be spent unraveling the various answers, and seeking to determine which answers related to Ms. O'Rourke and which did not. For example, with regard to comments "on NNMC Human Resources and Campus Services" reading "Very unprofessional" or "Dissatisfied," there is no way of knowing whether it is Human Resources or Campus Services that is unprofessional or dissatisfying. To address each of these separately—as the parties would have to do during trial to unravel these and similar issues—would take substantial time, amounting to a trial within a trial on each response. Such time spent on this issue would elevate the Survey to a level of apparent importance that cannot be justified given the many problems it poses. Similarly, reliance by the Defendant on any document referring to the Survey as grounds for disciplinary action taken against Ms. O'Rourke would either require full engagement with the Survey—which is obviously problematic—or would lend the Survey an improper air of legitimacy if it were simply referred to without being fully described. Either result would be unfairly prejudicial to Ms. O'Rourke because she is barred by the very nature of the document from uncovering the actual substance behind any of the comments.

**II. The Anonymous Survey Responses are by Nature Unreliable, and Their Use Would be Unfairly Prejudicial.**

The special problems posed by anonymous, online forums are relatively new, and are not thoroughly addressed by the courts. However, several unpublished opinions grapple directly with these special problems and reject admission of anonymous online opinions because such data is inherently unreliable and because there is no possibility for any party to cross examine the persons whose opinions are purportedly offered. See, e.g., Schreiber v. Federal Express Corp., Not Reported in F. Supp. 2d, 2010 WL 1078463 (use of voluntary, anonymous surveys barred; Defendant's inability to cross examine respondents made them irrelevant and unreliable);

SolidFX, LLC v. Jeppesen Sanderson, Inc., Not Reported in F. Supp. 2d, 2014 WL 1319361 (D. Colo. 2014) (finding online comments "inherently unreliable" and inadmissible because the defendant had no way of knowing who made comments, the bases for those comments, or "…even verifying that the comments were not made by Plaintiff or its representatives."); Auraria Student Housing at the Regency, LLC v. Campus Village Apartments, LLC, Not Reported in F. Supp. 3d, 2014 WL 4651643 (D. Colo. 2014) (noting that internet users will make outrageous, offensive, and even nonsensical statements because their true identities are protected) (citing references and internal punctuation omitted). As the internet becomes more and more interactive, these issues will likely become more prominent and our courts will develop a more robust jurisprudence with which to analyze such matters. In the meantime, however, this Court should consider the special issues posed by an anonymous, online survey. The Survey is inherently unreliable and must be excluded from evidence.

For all the reasons stated herein, Plaintiff Nancy K. O'Rourke respectfully requests that the Court exclude the Survey and any mention of the Survey from evidence to be admitted at trial of this matter.

Respectfully Submitted,

JONES, SNEAD, WERTHEIM &
CLIFFORD, P.A.

By: /s/Samuel C. Wolf
Samuel C. Wolf
1800 Old Pecos Trail
Santa Fe, NM 87504
Tel. (505) 982-0011
sam@thejonesfirm.com

**CERTIFICATE OF SERVICE**

It is hereby certified that on the 21st day of October, 2014, the copy of the foregoing Plaintiffs' Motion in Limine to Exclude Evidence Related to "Survey Monkey" Surveys was mailed to Mark A. Basham, Esq., Basham & Basham, PC, 2205 Miguel Chavez Road, Suite A, Santa Fe, New Mexico 87505 and e-mailed to mbasham@bbpcnm.com.

Respectfully Submitted,

JONES, SNEAD, WERTHEIM & CLIFFORD, P.A.

By: /s/Samuel C. Wolf

Samuel C. Wolf
1800 Old Pecos Trail
Santa Fe, NM 87504
Tel. (505) 982-0011
sam@thejonesfirm.com